UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | ) | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 8:13-cr-00100-PWG |
| | ) | |
| | ) | **DEFENDANT'S** |
| | ) | **REPLY** |
| **ALI SABOONCHI** | ) | |
| | ) | |

## DEFENDANT'S CONSOLIDATED REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S PRE-TRIAL MOTIONS

COMES NOW, Ali Saboonchi, Defendant in the above captioned matter, by and through undersigned counsel, and hereby moves this Honorable Court to grant Defendant's pre-trial motions and in support of those motions states as follows:

### I. Procedural History

Defendant is currently charged by a six-count indictment with one count of conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") and the Iranian Transactions and Sanctions Regulations ("ITSR"), in violation of 50 U.S.C. §§ 1702, 1705, and 31 C.F.R. §§ 560.203, 204, and five substantive violations of IEEPA and the ITSR, in violation of 50 U.S.C. §§ 1702, 1705, 31 C.F.R. §§ 560.203, 204, and 18 U.S.C. § 2. On March 21, 2013, Defendant was arraigned and entered a plea of not guilty to the Indictment.

Defendant filed several pre-trial motions on July 18, 2013, which included the following: 1) Motion to Suppress Evidence; 2) Motion to Exclude Evidence; 3) Motion to Strike Surplusage;

1

and 4) Motion *in Limine* to Exclude Lay Opinion Testimony. The Government filed its consolidated response and superseding indictment on August 23, 2013.

**II.  Argument**

*A. Motion to Suppress Evidence*

i. <u>The seizure and search of Defendant's flash drive and cell phone was unlawful</u>.

The Government argues that the search of Defendant's flash drive and cellular phone was lawful under the border search exception to the Fourth Amendment and thus, any evidence obtained or derived therefrom is admissible. Gov't Resp. at 27 (quoting *United States v. Flores-Montano*, 541 U.S. 149 (2004); *United States v. Ickes*, 393 F.3d 501 (4th Cir. 2005)). Specifically, the Government argues that the seizure and search of Defendant's personal property falls under the ambit of conduct lawfully permitted in a routine border search and therefore does not require reasonable suspicion, probable cause, or warrant. *Id*. at 27-28. Further, the Government argues that the extended border search analysis is not applicable here because Customs agents had not cleared Defendant's cell phone and flash drive for entry into the U.S., but rather the property was detained and searched under the purview of 19 U.S.C. §§ 1499, 1581 and 1582.

Defendant does not contest the U.S. Government's significant interest in preventing the entry of unwarranted persons and effects at its borders, and hence a lessened privacy standard. *Flores-Montano*, 41 U.S. at 152-53. However, the search of Defendant's property did not take place at the border as part of a routine search. Rather, his property was seized as part of an investigation and subjected to an intrusive forensic search at a separate location approximately several days following the border crossing. The seizure and search is challenged by Defendant on grounds that it resembled an extended border search, and alternatively, the intrusive nature of the search required reasonable suspicion.

In the case of extended border searches, there is a heightened expectation of privacy due to the more intrusive nature into an individual's expectation of privacy and thus, such searches cannot be unreasonable. *United States v. Seljan*, 547 F.3d 993, 1002-03 (9th Cir. 2008). Due to the more severe intrusion into a person's reasonable expectation of privacy in the case of extended border searches, reasonable suspicion is thereby required. *United States v. Guzman-Padilla*, 573 F.3d 865, 877 (9th Cir. 2009).

As the Government points out, Defendant was cleared for entry, yet his property was not. Rather, his property was transferred to another location and subjected to a complete search at a time separate and distinct from the border stop. In sum, the Government's counter argument is premised upon its conclusion that Defendant's property was never cleared for entry into the U.S. by Customs and therefore, the search of the electronics several days later was simply a "continuation" of a routine border search in which reasonable suspicion was never required. Gov't Resp. at 28-29

The Fourth Circuit has addressed the issue of reasonable expectation of privacy at the border. In *Ickes*, the defendant was stopped for a routine border search. 393 F.3d at 502. The initial search of defendant's van revealed incriminating evidence of child pornography and marijuana possession. *Id*. at 502-503. This discovery led to the arrest and detention of Ickes by Customs' agents. *Id*. at 503. Customs' agents conducted a more thorough search of his vehicle, at which point a computer and 75 discs were found. *Id*. The contents of Ickes' computer were searched while he was subjected to questioning at the border. *Id*. Evidence obtained from the computer and disc search, as well as defendant's statements obtained subsequent to his *Miranda* waiver, were deemed admissible at trial. *Id*.

Ickes challenged the admissibility of the evidence obtained from the border search on two grounds: 1) the statute granting Customs' agents authority to conduct searches at the border, 19 U.S.C. § 1581, did not extend to content contained on a computer or other electronic media; and 2) even if the statute granted such authority, the search was nonetheless unconstitutional under the Fourth Amendment due to protections granted to "expressive material" under the First Amendment. *Id*. at 503-06. In ruling on the first issue, Judge Wilkinson held that Congress, by the plain meaning and context of the statute, intended for Customs agents to have broad authority to conduct routine searches of persons and their cargo *at the border*. *Id*. at 504-05 (emphasis added). As to the second issue, the Court rejected Ickes' argument and refused to carve out a First Amendment exception to the border search doctrine, holding that the U.S. Government's interest in protecting its borders outweighs the private interest in protecting expressive materials under the First Amendment. *Id*. at 506-07.

The Government's reliance on *Ickes* is misplaced due to the following: 1) the seizure and search of Ickes' computer and discs was based upon reasonable suspicion after discovering contraband in plain view; 2) the search in Ickes took place *at the border*; and 2) Ickes challenged the search on First Amendment grounds. The issues presented by the Defendant before this Court are distinguishable from that presented before the Fourth Circuit in *Ickes* in that the search did not take place at the border, and more significantly, reasonable suspicion never existed. It is the contention of Defendant that the search of his property at least required reasonable suspicion due to its similarity to an extended border search. Defendant opines that this particular issue is a matter of first impression for the Court and as such, Defendant respectfully argues that at the very least, reasonable suspicion was required to conduct the search.

In the event that the circumstances do not rise to an extended border search, the Ninth Circuit's holding in *United States v. Cotterman* is instructive in the instant case. 709 F.3d 952 (9th Cir. 2013). In *Cotterman*, the defendant was subjected to a secondary inspection due to a "hit" on Treasury Enforcement Communication System ("TECS") as a sex offender and ongoing suspicion of his involvement in child sex tourism. *Id*. at 957. The defendant's laptops and digital camera were detained; however, the defendant was permitted to enter the United States after he was subjected to questioning. *Id*. at 958. The defendant's property was later subjected to a forensic search at a different location. *Id*. The defendant challenged the admissibility of evidence obtained from the search on Fourth Amendment grounds.

Relying on the "touchstone of reasonableness," the Ninth Circuit distinguished *Cotterman* from prior case law, mainly due to the intrusive forensic search of the property. *Id*. at 960-963. In reaching its conclusion that a Fourth Amendment violation had occurred, the Ninth Circuit considered the long history of the border search exception and the holdings of *Flores-Montano* and *Montoya de Hernandez*. 541 U.S. 149 (2004); 473 U.S. 531 (1985). The Court held that, by the very nature of electronic devices, "they contain the most intimate details of our lives: financial records, confidential business documents, medical records and private emails. This type of material implicates the Fourth Amendment's specific guarantee of the people's right to be secure in their 'papers.'" *Cotterman* at 964, citing U.S. Const. amend. IV.[1]

The Government attempts to sway the Court from following the holding in *Cotterman*. The Government instructs that the Court should instead follow the dissent of Judge Callahan, in which the Judge cites to *Ickes* in support of his assertion that "electronic devices are like any other

---

[1] It is also relevant that Defendant's property contained unique and private information not in plain view, similar to Fourth Amendment jurisprudence regarding closed containers. See *United States v. Upham*, 168 F.3d 532, 536-37; see also *Robbins v. California*, 453 U.S. 420, 427 (1981); *United States v. Johnson*, 495 F.3d 536, 539 (7th Cir. 2007); *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007).

5

container that the Supreme Court has held may be searched at the border without reasonable suspicion." *Id*. at 976. As previously discussed above, the instant case is distinguishable from *Ickes* for a number of reasons. Therefore, Defendant strongly encourages this Court to suppress the evidence obtained from the unlawful seizure and search of Defendant's property, consistent with the holding of *Cotterman*.

    ii. <u>The Defendant's statements were obtained unlawfully.</u>

  Defendant has moved to suppress statements obtained by Customs agents during the border stop, as well as when he went to meet Customs agents to retrieve his detained property. According to the Government's motion, it does not intend to introduce statements made by Defendant while at the border; however, the Government does intend to introduce statements made by Defendant as to the latter. Gov't Resp. at 30. As such, Defendant's reply is focused on an analysis of the admissibility of the statements made on April 13, 2012, when Defendant met with HSI agents to collect his property.

  The Government relies on the legality of the border search to justify the admissibility of Defendant's statements. Defendant does not agree with the Government's analysis of the border search doctrine in this case, and as such, reaffirms his contention that any statements made by him to federal agents at the border, and subsequently thereafter, are fruit of the poisonous tree, and should be suppressed as a matter of law. Specifically, Defendant contends that the statements were obtained through an unlawful search, and but for the unlawful search, incriminating statements would not have been elicited.

  As thoroughly addressed above, the border search was conducted unlawfully due to the fact that Defendant was entitled to at least the protection of reasonable suspicion as required by an extended border search, and even more so because of the intrusive search of his property that

6

undeniably occurred. The unlawful border search led to physical evidence, which after forensically examined, led to subsequent questioning by agents on April 13, 2012. As the Supreme Court has held, evidence obtained as a direct result of an illegal search or seizure, as well as evidence later discovered and found to be derivative of an illegality, is "fruit of the poisonous tree," the only remedy of which is exclusion. *Nardone v. United States*, 308 U.S. 338, 341 (1939); see also *Weeks v. United States*, 232 U.S. 383 (1914). Indeed, the exclusionary rule applies to indirect and direct products of unconstitutional conduct. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). As such, the April 13 statements should be suppressed.

Furthermore, the statements elicited from Defendant on April 13, 2012, were the continuation of an unlawful custodial interrogation which occurred at the border stop on March 31, 2012. Regardless of whether the Government intends to introduce statements obtained at the border stop, the totality of the circumstances indicate that Defendant was subjected to a custodial interrogation at that time. The Government admits that Defendant was not free to leave, and even more significantly, that the reason Defendant was stopped was due to the ongoing investigation against him. Gov't Resp. at 24, 29. Although Defendant met with agents to retrieve his property on April 13, 2012, the agents were well aware that incriminating responses would likely be made by Defendant once they initiated questioning regarding U.S. sanctions against Iran. Moreover, Defendant was particularly susceptible to express questions relating to transactions involving Iran that the interrogating agents were clearly aware of. *Rhode Island v. Innis*, 446 U.S. 291, 302, n.8. In determining whether the statements elicited on April 13 were made voluntarily, Defendant urges this Court to consider the totality of the circumstances, focusing on the nature of Defendant and the techniques used by the agents, and hold that his statements should be suppressed. See *Miller v. Fenton*, 474 U.S. 104, 116 (1985).

### B. Motion to Exclude Evidence

In the Government's superseding indictment, two additional co-conspirators have been added, Mehdi Mohammadi and Ehsan Nagshineh. The superseding indictment also extends the applicable time period from September 2009 through March 2013 (previously November 2009 through March 2013).

Although the superseding indictment effects a portion of the evidence Defendant sought to exclude in the Motion, Defendant's request is still applicable as to communications between co-conspirators and others, where Defendant is not included, mentioned or referred to. Further, Defendant's request to exclude communications made between persons where neither co-conspirators nor Defendant are included, mentioned or referred to, also stills stands in light of the superseding indictment.

The Government argues that such evidence should be admissible as acts intrinsic to the alleged crimes committed by Defendant, and further, that the charge of conspiracy allows the Government to introduce evidence of acts and communications committed by all co-conspirators in its case against Defendant. Indeed, the Government must meet its burden as to the charges against the Defendant; however, the introduction of irrelevant evidence to do so is not permissible under the Federal Rules of Evidence. Fed. R. Evid. 402. Moreover, evidence should be excluded if it is riddled with the dangers of unfair prejudice, will confuse the issues, mislead the jury, or result in undue delay or a waste of time. Fed. R. Evid. 403.

Unfortunately for Defendant, he is the only alleged conspirator present within the United States. The introduction of every act and/or communication by the co-conspirators with others, to which Defendant had no knowledge and was not privy to, is certainly unfairly prejudicial. While such evidence arguably may carry with it probative value as to proving the Government's theory

of an overarching conspiracy, certainly the admissibility of such evidence will confuse the central issue in the case: whether Defendant acted willfully in exporting goods to an embargoed country.

It is true that a co-conspirator is liable not only for his conduct, but the conduct of other co-conspirators "that could be reasonably foreseen as a necessary part of the conspiracy or a natural consequent of it." *United States v. Carrington*, 301 F.3d 204, 211 (4th Cir. 2002); *Pinkerton v. United States*, 328 U.S. 640, 647 (1946). However, the Government does not cite to any credible evidence that demonstrates whether Defendant could have reasonably foreseen the acts or communications made by the co-conspirators, all of which are located elsewhere. Rather, the Government's entire case is premised upon assumptions and speculation as to Defendant's comprehension of the acts and intentions of the co-conspirators.

The introduction of the acts of others, including co-conspirators, will impart full blame on Defendant and cause the jury to hold Defendant accountable for every single act and communication of others, regardless of whether he was made aware of such acts. Thus, as a matter of efficiency and judicial fairness, the evidence of communications to which Defendant was not privy to should be excluded.

    *C. Motion to Strike Surplusage*

As the Government acknowledges, a motion to strike surplusage should be granted only if it is clear that the information is not relevant to the charge and is inflammatory and prejudicial. Gov't Resp. at 32 (quoting *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006)). The purpose of such a request is to protect the defendant "against immaterial or irrelevant allegations in an indictment or information, which may . . . be prejudicial." Fed. R. Crim. P. 7(d), advisory committee note; see also *Williams*, 445 F.3d at 733; *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979).

Defendant has been charged with unlawfully exporting goods and services to an embargoed country and conspiracy to do so. Pursuant to criminal violations of IEEPA, the Government must prove that the Defendant acted willfully. 50 U.S.C. § 1705(c). "Willful violations" require proof that the Defendant acted with knowledge that the conduct was unlawful. Accordingly, the Ninth Circuit has stated that, "willfulness . . . requires the Government to prove the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *United States v. Kellog*, 955 F.2d 1244, 1248 (9th Cir. 1992). Carrying this burden "requires negating a defendant's claim of ignorance of the law or a claim that because of misunderstanding of the law, that [the defendant] had a good faith belief he was not violating" the law. *Kellog* at 1248.

Additionally, the Supreme Court has stated that in cases involving "highly technical statutes that present the danger of ensnaring individuals engaged in apparently innocent conduct," willfulness requires the Government to prove that the Defendant acted with specific intent to violate a known legal duty. *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994); *Bryan v. United States*, 524 U.S. 184, 194 (1998); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58 (2007); see also *United States v. Quinn*, 401 F. Supp. 2d 80, 100 (D.D.C. 2005) (IEEPA regulations restrict trade with Iran and "govern the activities of relatively sophisticated individuals who are deliberately engaged in international commerce and, therefore, must be familiar with (if not expert in) various legal regimes . . . in multiple countries.").

To establish a conspiracy, the Government must prove the existence of the following: 1) an agreement to commit an unlawful act; 2) the Defendant's knowledge of the agreement and voluntary participation in it; and 3) an overt act by at least one of the coconspirators in furtherance of the conspiracy. *United States v. Munoz-Franco*, 487 F.3d 25, 45 (1st Cir. 2007).

Neither charge requires the Government to prove the potential applications of the goods allegedly exported. Moreover, the Government is not required to identify the parties in Iran that may have eventually used the goods, regardless of whether it concerns private or government controlled entities. This leads Defendant to believe that the so-called "general descriptions" of the goods as currently set forth in the indictment serve as a veiled attempt by the Government to associate the Defendant with Iran's energy sector. The connotation carries with it an inherent prejudicial nature in light of the United States' foreign policy towards the Government of Iran over the past several decades, which will be imputed to the jury if the language is permitted to stand as is.

Moreover, the Government's claims as to Defendant's knowledge of the application of the goods and the identity of the parties for whom they were destined for in Iran is mere speculation based upon circumstantial evidence. Gov't Resp. at 33. Evidence in this case also demonstrates that Defendant did not have a clear understanding of the nature of the products, nor the ultimate end-user. These issues of fact are ultimately for the jury to decide, and for that reason, the indictment must not unfairly prejudicial Defendant by containing unnecessary and harmful language. Therefore, Defendant respectfully requests the Court to strike the referenced surplusage, as amended by the superseding indictment.

*D. Motion in Limine*

Defendant has requested to exclude lay testimony of by federal agents, investigators, or other civilian witnesses regarding: 1) their knowledge relating to Iran's nuclear activities, support of terrorism, military and law enforcement activities and/or the Government of Iran's control of the oil and gas industry; and 2) their opinions as to IEEPA, IEEPA based criminal charges, and U.S. foreign policies targeting Iran. In its response, the Government states that it does not intend

to introduce opinion testimony regarding any of these subjects, yet states that it intends to introduce factual testimony as to application of OFAC regulations and the criminal implications of IEEPA for violations of OFAC regulations. Gov't Resp. at 34. Defendant believes that any testimony given that *goes beyond* the factual testimony described in the Government's motion is highly prejudicial and should be excluded, or in the alternative, should be deemed expert testimony by this Court, and adequate notice and summaries provided to Defendant as required by the Federal Rules of Criminal Procedure. Fed. R. Crim. Pro. 16(a)(1)(G).

In support of its reasoning for introducing the factual testimony, the Government states that it is required to prove to whom the Defendant was supplying goods and services to in Iran and whether the Defendant acted willfully in doing so. Although the Government is correct in its assertion that it must establish Defendant acted willfully, the law does not require the Government to identify the specific parties in Iran that allegedly received the goods and services, thus rendering a low probative value of such evidence. Specifically, the introduction of testimony as to the client list allegedly sent to Defendant by Rashti, and any opinion as to his understanding of the clients' ties to the Government of Iran, is speculative and improper opinion testimony, precisely the type of which Defendant seeks to exclude.

Conversely, if the Government is permitted to introduce opinion testimony as to Defendant's knowledge of the specific entities in Iran with whom Rashti was allegedly dealing with, particularly those with direct ties to the Government of Iran, it will impute a highly prejudicial assumption to the jury that the Defendant was somehow associating with the Government of Iran. In the Government's view, reference to Iran's government will not influence the emotions of the jury; however, that is a risk that Defendant simply cannot afford to take in light

of the highly prejudicial impact compared to the low probative value of the introduction of such evidence.

Moreover, as it stands today the Iranian Transactions and Sanctions Regulations in its entirety as administered by OFAC consists of a legal framework implicating numerous statutes, federal register notices, executive orders, and regulations. This body of law, to say the least, is extremely complex, dense and varied. As such, any opinion given by Government lay witnesses as to the policies supporting the imposition of these laws should not be considered lay testimony. Testimony as to the particulars of the regulations, their application, and the policy supporting criminal prosecutions under IEEPA for violations of the Iran regulations, is certainly specialized and should be treated as such. Fed. R. Evid. 702.

Therefore, Defendant reaffirms his request to exclude improper lay opinion testimony relating to Iran's nuclear activities, support of terrorism, military and law enforcement activities and/or the Government of Iran's control of the oil and gas industry, as well as opinions as to IEEPA, IEEPA based criminal charges, and U.S. foreign policies targeting Iran. In the alternative, Defendant requests that such testimony be deemed as expert opinion testimony, thereby requiring the Government to comply with the provisions of Rule 16(a)(1)(G).

## PRAYER

WHEREFORE, for the above reasons and for any other reasons which may appear to the Court, the Defendant respectfully moves this Honorable Court to grant Defendant's pre-trial motions and the relief requested therein.

Respectfully submitted this 29th day of August, 2013.

/s/ Erich C. Ferrari, Esq.
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.

1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: Ferrari@ferrariassociatespc.com

# CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August, 2013, I electronically filed the Defendant's consolidated Reply via the CM/ECF system.

/s/ Erich C. Ferrari, Esq.
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: Ferrari@ferrariassociatespc.com

Attorney for Defendant,
*Ali Saboonchi*