

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

*Christine Manuelian*
*Assistant United States Attorney*
*Christine.Manuelian@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4852*
*MAIN: 410-209-4800*
*FAX: 410-962-9293*

October 7, 2013

Honorable Paul W. Grimm
United States District Court
  District of Maryland
6500 Cherrywood Lane
Greenbelt, MD  20770

     Re:  *United States v. Ali Saboonchi*
           Criminal No. PWG-13-0100

Dear Judge Grimm:

     At our motions hearing last week, the Court indicated it is considering issuing an advisory opinion on whether reasonable suspicion of wrongdoing should be required before customs officers can forensically search electronic media at the border.  The government respectfully asks the Court to withhold issuing such an opinion for the following reasons.  The government also requests that this letter be considered its supplemental briefing on this issue.

     The Court has found that the forensic search of the defendant's thumb drive and cell phone detained at the border was a valid border search, and that customs officers had ample reasonable suspicion of the defendant's criminal activities prior to conducting the search.  Given the Court's finding, and the fact that the government does not intend to use any evidence obtained from the search at trial, the constitutional issue of whether reasonable suspicion was, in fact, required in this case is somewhat moot.  Indeed, the Court specifically indicated at the hearing that it did not need to address this issue in the context of the case given that reasonable suspicion was present.

     To the extent that the defendant argues that statements made by him when his detained property was returned were "fruit" of an illegal search absent reasonable suspicion, he will be able to fully challenge on appeal the Court's finding that reasonable suspicion was present.  However, since the government is the prevailing party on this issue, it is likely that it will be unable to appeal, or otherwise challenge, an opinion issued by the Court, be it advisory or case-related, suggesting that reasonable suspicion should be required for a forensic border search.  As the Supreme Court noted in *Camreta v. Greene*, 563 U.S. ___, 131 S.Ct. 2020 (2011), federal courts of appeals "will usually invoke rules of federal appellate practice to decline review of a prevailing party's challenge even when he has the requisite stake," 131 S.Ct. at 2029, and "[a]s a matter of practice and prudence, we have generally declined to consider cases at the request of a prevailing party, even when the Constitution allowed us to do so." *Id.* at 2030.

It is axiomatic in our system of jurisprudence that constitutional issues and standards are settled in the courts of appeal. Should this Court render a legal opinion placing constitutional restraints on the sovereign's broad border search authority, the government, having prevailed on the facts, would be precluded on appeal from challenging the Court's adverse legal conclusions. In other words, the Court's legal analysis would not be subject to the adversarial process, and a significant national interest, i.e., the ability of the sovereign to adequately patrol its borders, would be adversely affected by application of the Court's unchallenged opinion to future cases in this District and elsewhere. *See Ostregren v. Cucinelli*, 615 F.3d 263, 287-88 (4th Cir. 2010) (noting limitations on the jurisdiction of Article III courts requiring them to avoid premature adjudication by "entangling themselves in abstract disagreements" on matters that are inadequately developed or otherwise ambiguous in the record.)

As the Court noted at our hearing, the Ninth Circuit is the only federal appellate court that has held that reasonable suspicion of wrongdoing is required before customs officers can subject electronic media detained at the border to a forensic search. Its holding in *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2012), is in tension with Supreme Court precedent that has only limited the sovereign's broad border search authority in the context of intrusive searches of the person. *See, e.g., United States v. Flores-Montano*, 541 U.S. 149 (2004). Though the Fourth Circuit has not directly addressed the issue presented in this case, it has opined that electronic devices are like any other containers that may be searched at the border without reasonable suspicion. *United States v. Ickes*, 393 F.3d 501, 503-06 (4th Cir. 2005) (declining to extend First Amendment protection to a non-forensic border search of a computer). *See also United States v. Linarez-Delgado*, 259 Fed.Appx. 506, 508 (3d Cir. 2007) (viewing of video footage on a camcorder detained at border was a reasonable border search not requiring a warrant, consent or reasonable suspicion); *House v. Napolitano*, 2012 WL 1038816, slip op. at 7-8 (D.Mass. 2012) (unpublished) (forensic border search of computer does not involve dignity and privacy interests associated with highly intrusive searches of the person, and requiring higher level of suspicion for such searches would arbitrarily "provide travelers carrying such devices with greater privacy protection than others who chose to carry the same type of personal information in hard copy form"); *United States v. Verma*, 2010 WL 1427261, slip op. at 4 (S.D.Tex. 2010) (unpublished) (forensic border search of traveler's computer and external drives, regardless of how exhaustive, constitutes routine search, does not threaten the traveler's dignity nor inflict damage to his property, and is far less intrusive than dismantling of traveler's gas tank upheld as routine border search in *Flores-Montano*); *United States v. Irving*, 2003 WL 22127913, slip op. at 5 (S.D.N.Y. 2003) (unpublished) (developing and inspecting undeveloped film found in traveler's camera is a routine border search not requiring reasonable suspicion).

Having the broad discretion to search travelers and the devices and other items they carry is imperative to protecting the national security and economy of the United States. It is true, as the Court stated at our motions hearing, that with the advancement of technology comes the ability to store large amounts of information beyond what might be contained in traditional storage devices such as bags, containers, notebooks and paper documents. It is also true, however, that with that technology comes the ability to intentionally hide and obfuscate information that, if discovered, could adversely affect our national interests. Granting a higher

level of protection to the search of electronic media would provide an obvious path to criminal actors to conceal evidence of their wrongdoing so as to render it undetectable in a non-forensic search.

As the Fourth Circuit noted in *Ickes*, "[t]he essence of border search doctrine is a reliance upon the trained observations and judgments of customs officials, rather than upon constitutional requirements…." 393 F.3d at 507. "As a practical matter, computer searches are most likely to occur where … the traveler's conduct or the presence of other items in his possession suggest the need to search further." *Id.* That is precisely what occurred in the instant case, which is why the Court determined that it need not reach the issue of whether reasonable suspicion was required. It is for this reason, coupled with the likelihood that the government, as the prevailing party, would be unable to appeal an opinion suggesting adoption of a higher standard for forensic border searches, that the government respectfully requests the Court withhold issuance of an advisory opinion on this issue at this time. There may come a time when a matter presents itself in the District that is in a better posture, both factually and procedurally, to make its way to the Fourth Circuit for review and resolution of whether reasonable suspicion is constitutionally required for a forensic search. This case does not present that scenario.

          Very truly yours,

          /s/

          _____

          Christine Manuelian
          Assistant United States Attorney

cc: (by ECF)
    Erich Ferrari, Esquire
    Margaret Ververis, Esquire