IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *  Criminal No PWG-13-0100 |
| | * |
| ALI SABOONCHI | * |
| | * |
| ****** | |

**GOVERNMENT'S MEMORANDUM ON
INVOCATION OF SEQUESTRATION EXCEPTION UNDER FED.R.EVID. 615**

The United States of America, by and through its undersigned counsel, submits the following memorandum to address whether both of the government's case agents can be excepted from sequestration pursuant to Fed.R.Evid. 615.

Rule 615 of the Federal Rules of Evidence provides, in pertinent part, that:

[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses's testimony. Or the court may do so on its own. But this rule does not authorize excluding:

(b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; [or]

(c) a person whose presence a party shows to be essential to presenting the party's claim or defense….

The government designates FBI Special Agent Scott Abagnale as its party representative. As such, he is excepted from sequestration, pursuant to Fed.R.Evid. 615(b). The government designates HSI Special Agent Kelly Baird as a person essential to the presentation of its case. As such, she would also be excepted from sequestration, pursuant to Fed.R.Evid. 615(c).

In *United States v. Farnham,* 791 F.2d 331 (4th Cir. 1986), the Fourth Circuit reiterated the long-held axiom that "the government's chief investigating agent [may] remain in the courtroom throughout the proceedings, even if he is expected to testify." *Id.* at 334 (citing

*United States v. Parodi,* 703 F.2d 768 773 (4th Cir. 1983)).  The court held, however, that it was error, albeit harmless, to allow two case agents designated as the government's representatives under Rule 615(b) to remain in the courtroom throughout the trial.[1]  The reason for the court's ruling was the fact that the defendant's conviction on a particular count of the indictment

> turned exclusively on the relative credibility of the defendant on the one hand and [the two case agents] on the other.  Sequestration of [each agent during the other's testimony] would have minimized the opportunity for collusion or tailoring of testimony, permitting [the defendant] to test each agent's credibility, independent of the other's testimony.

*Id.* at 334-35.  The error was ultimately deemed harmless by the court because any possible tailoring of the agents' testimony resulting from their joint presence in the courtroom was limited to one count of the indictment, and could not have affected the ultimate outcome on the remaining charges.  *Id.* at 335-36.

The Fourth Circuit's decision in *Farnham* was limited to the sequestration exception under Rule 615(b).  The court specifically noted that the government had not sought to except one of the case agents from sequestration as a party essential to the presentation of the government's case under Rule 615(c), which would have been difficult to justify given that the case was a "relatively simple" perjury trial lasting two days.  *Id.* at 335 n.5.

The situation presented in this case is distinct from *Farnham* in two respects.  First, as explained in more detail below, Agents Abagnale and Baird will be testifying about separate and distinct matters.  In *United States v. Kosko,* 870 F.2d 162 (4th Cir. 1989), the court reaffirmed *Farnham's* holding that only one case agent may be designated under Rule 615(b), but upheld the district judge's decision to allow both the DEA and IRS case agents to remain in the

---

[1] The relevant portions of Rule 615 appear to have been renumbered, effective December 2011, from 615(2) and (3) to 615(b) and (c).  Much of the case law cited herein refers to the originally numbered version of the rule; however, for consistency, citations herein are to the rule as currently configured.

2

courtroom since the IRS agent was going to testify as an expert and needed to hear all of the testimony.  In so holding, the court noted that "the testimony of the two agents did not overlap as to any matter on which they had personal knowledge, and therefore their mutual presence during trial could not have undermined the integrity of the fact-finding process."  *Id.* at 164.  *See also United States v. Neely,* 76 F.3d 376, slip op. at *13 (4th Cir. 1996) (unpublished) (*citing Kosko* and *Farnham* to hold harmless designation of two case agents in violation of 615(b) in light of fact that testimony of both agents "concerned entirely different matters").

Second, and more importantly, the government is not seeking to designate Agent Baird as its representative, but rather, to obtain her exception from sequestration under the third prong of Rule 615 – that is, as a person essential to the presentation of the government's case.  In *United States v. Phibbs,* 999 F.2d 1053 (6th Cir. 1993), the Sixth Circuit upheld the presence of two agents in the courtroom, one of whom was designated as the government's representative under Rule 615(b), and the other as a person essential to the presentation of the government's case under Rule 615(c).  The court noted that "certain prosecutions may be complex enough that the aid of more than one law enforcement officer is needed to sort through extensive, technical evidence, and to help 'map out strategy.'"  *Id.* at 1072 (internal citation omitted).  In upholding the district court's decision to allow the second case agent to remain in the courtroom pursuant to Rule 615(c), the court noted, among other things, that: 1) the case involved a great deal of evidence, "not all of which was readily accessible;" 2) the second case agent was "intimately familiar with portions of the evidence" and thus, "needed to advise the government in its handling of the prosecution;" and 3) the district judge had taken steps to insure that the agents would not "parrot each other's testimony."  *Id.* at 1073.

In reaching its opinion in *Phibbs,* the Sixth Circuit relied on its prior opinion in *United States v. Pulley,* 922 F.3d 1283 (6th Cir. 1991). In that case, the court found the presence of two case agents in the courtroom pursuant to Rule 615(b) to be in error. However, it held the error harmless for a number of reasons, all of which are present in the instant case. First, one of the agents was the first witness to testify and "could not possibly have tailored his testimony" to conform to the testimony of the other witnesses. *Id.* at 1286. Second, the other agent, who testified next, would have been entitled to remain in the courtroom to hear the first agent's testimony as the government's representative under Rule 615(b). *Id.* Finally, though there was some overlap between the agents' testimony, the overlap was insignificant "'and therefore their mutual presence during trial could not have undermined the integrity of the fact-finding process.'" *Id.* (quoting *Kosko*, 870 F.2d at 164). As the court noted, "the risk of any significant harm was virtually non-existent." *Id.* at 1287.

The Advisory Committee Notes to Rule 615 state that a person considered essential to the presentation of a party's case "contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation." In *United States v. Jackson*, 60 F.3d 128 (5th Cir. 1995), the Fifth Circuit set forth a number of factors to be considered in determining whether the exceptions to Rule 615 are properly invoked. These factors include:

> 1) how critical the testimony in question is, that is, whether it will involve controverted and materials facts;
>
> 2) whether the information is ordinarily subject to tailoring such that cross-examination or other evidence could bring to light any deficiencies;
>
> 3) to what extent the testimony of the witness in question is likely to encompass the same issues as that of other witnesses;
>
> 4) the order in which the witnesses will testify;

    5)  any potential for bias that might motivate the witness to tailor his testimony; and

    6)  if the court is considering exempting the witness from sequestration under Rule 615(3), whether the witness's presence is "essential" rather than simply desirable.

*Id.* at 135.

Agent Abagnale will be testifying during the course of the trial with regard to matters surrounding the defendant's arrest and the electronic and subpoenaed evidence, which forms the crux of the government's case-in-chief. His testimony will be separate and distinct from that of Agent Baird, who will be called to testify as the government's first witness. Her testimony will be limited to matters that did not involve Agent Abagnale, specifically: the defendant's statement following the border search of his electronic media (about which Agent Baird previously testified in Agent Abagnale's presence at the September 2012 motions hearing); identification of certain items seized during the search of the defendant's residence (for which Agent Abagnale was not present); and the defendant's travel history.

The instant case encompassed a detailed multi-year investigation involving the seizure and examination of thousands of electronic communications, identification and review of hundreds of business records, and interviews of dozens of witnesses associated with the businesses targeted by the defendants, or otherwise involved in their unlawful activities. The two case agents worked in tandem throughout the investigation interviewing witnesses and processing and reviewing the voluminous documentary and electronic evidence.

The most daunting task in this case has been the collection and review of over twenty thousand seized electronic emails and chats between the defendant, his coconspirators and the businesses they targeted to obtain quotes and products ultimately destined for unlawful export to Iran. These electronic communications took place over a period of four years over eight

different email accounts. The agents had to initially review and extract those emails and chats pertinent to the case and authorized for seizure under five separate email search warrants, and then piece those emails and chats together to determine the trajectory of specific transactions that resulted in unlawful exports or attempted exports, and that evidenced the defendants' knowledge and intent. Successful identification and review of the relevant electronic evidence required both agents to become facile with the electronic database housing the documents.

The agents' facility in locating relevant electronic evidence has been instrumental in putting together the government's case-in-chief, since the government's evidence consists, almost in its entirety, of the seized electronic communications. Moreover, both agents have been present during preparation of the government's trial witnesses, many of whom they had interviewed during the course of the investigation. Compiling the electronic evidence into a manageable presentation has been a voluminous undertaking, especially since the seized evidence emanates from multiple email accounts used by the defendant and his coconspirators. Due to the size of the seized electronic evidence, undersigned counsel has had to rely extensively on the ability of both agents to access pertinent electronic communications from the database housing that evidence. In fact, on many occasions during the course of trial preparation, the voluminous nature of the electronic evidence has required both agents to assist one another in locating certain relevant communications. Both agents are the only members of the government's trial team fully familiar with how to locate and retrieve the electronic evidence.

As a result, Agent Baird's knowledge of the electronic evidence and facility with the database system will be critical to the presentation of the government's case, especially during Agent Abagnale's testimony. Because AUSA O'Malley will be taking notes of Agent Abagnale's testimony for use in closing arguments, AUSA Manuelian will have to rely on Agent

Baird's assistance in not just controlling the presentation of the documentary evidence as it is introduced, but also on Agent Baird's advice and counsel on issues that may arise during Agent Abagnale's testimony, both on direct and cross-examination, regarding aspects of the electronic and documentary evidence. If specific emails or chats need to be located, Agent Baird is the only individual capable of doing so. Without Agent Baird in the courtroom, the government will be severely prejudiced, not only in undersigned counsel's ability to fully rebut issues that arise during trial, but also in terms of streamlining the government's presentation so that completion of the trial is not unduly delayed. The only paralegal available to government counsel just began his job at the U.S. Attorney's Office a few weeks ago and has had no involvement in this case, has not been assisting counsel in trial preparation, and does not have access to, let alone facility with, the database of the seized electronic evidence.

The Advisory Committee Notes to Rule 615 state that "[t]he efficacy of excluding or sequestering witnesses has long been recognized as a means of discouraging and exposing fabrication, inaccuracy, and collusion." Since the testimony of Agent Abagnale will have no bearing on the testimony of Agent Baird, and vice versa, and their testimony is separate and distinct, the concerns addressed by Rule 615 are simply nonexistent. That fact is underscored further by Agent Baird taking the stand to testify before anyone else in the case, including her co-case agent. Under these circumstances, and the fact that the government's electronic evidence is voluminous and not readily accessible absent Agent Baird's assistance, Agent Baird's presence is essential to the orderly presentation of the government's evidence. Thus, she is properly excepted from sequestration pursuant to Rule 615(c).

        Respectfully submitted,

        Rod J. Rosenstein
        United States Attorney

By: _____/s/_____
Christine Manuelian
Kristi O'Malley
Assistant United States Attorneys
36 S. Charles Street, 4th Floor
Baltimore, MD  21201
410-209-4852