**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | * |
| v. | *   Criminal Case No.: PWG-13-100 |
| **ALI SABOONCHI,** *et al.* | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Defendant Ali Saboonchi is alleged to have violated Iranian Transactions and Sanctions Regulations (the "ITSR") promulgated under the International Emergency Economic Powers Act (the "IEEPA"). Previously, Saboonchi moved to suppress the fruits of warrantless forensic searches of his smartphones and flash drive performed under the authority of the border search doctrine after they were seized at the U.S.–Canadian border. Following a hearing on September 23, 2013, I sought supplementary briefing and issued a written opinion denying the motion on April 7, 2014. *United States v. Saboonchi*, ---- F.Supp. 2d ----, 2014 WL 1364765 (D. Md. Apr. 7, 2014). However, on June 25, 2014 the Supreme Court issued *Riley v. California*, 134 S. Ct. 2473 (2014), holding that the warrantless search of a suspect's cell phone fell outside of the Fourth Amendment's warrant exception for searches incident to arrest, *id* at 2485–86. Saboonchi now moves for reconsideration of my previous ruling in light of *Riley*. Because *Riley*'s holding did not touch on the border search exception and my reasoning in *Saboonchi* largely accords with that of the Court, Defendant's Motion to Reconsider will be denied.

I.     BACKGROUND[1]

Saboonchi and his wife were stopped by United States Customs and Border Protection ("CBP") agents on March 31, 2012 at the Rainbow Bridge outside of Buffalo, New York when returning from a daytrip to the Canadian side of Niagara Falls.  Def.'s Mot. to Suppress Evid. 2, ECF No. 58.  Saboonchi and his wife were questioned before eventually being released, but CBP seized several electronic devices with the intent to search them:  an Apple iPhone, a Sony Xperia phone, and a Kingston DT101 G2 USB flash drive (the "Devices").  *Id.* at 3.  The Devices were sent to Baltimore, where Homeland Security Investigations ("HSI") agents imaged and forensically searched each device using specialized software.  *See* ICE Report of Investigation Continuation (the "ICE Reports"), Def's Mot. to Suppress Ex. A., ECF No 58-1.  Saboonchi moved to suppress the fruits of the warrantless searches of the Devices, along with the statements he made to investigators on April 13, 2012.  Def.'s Mot. to Suppress 1.

Following an evidentiary hearing, I sought supplemental briefing from the parties.  H'rg Tr. 37:10 – 42:25, September 23, 2013, ECF No. 89.  On April 7, 2014, I issued a lengthy opinion in which, after a thorough analysis of both the relevant law and realities of modern technology, I held that a forensic search of a computer or electronic device constituted an nonroutine search even when performed at the international border and that such a search must rest on reasonable, particularized suspicion.  *Saboonchi*, 2014 WL 1364765, at *1, *10; *see United States v. Montoya de Hernandez*, 473 U.S. 531, 541 (1985).  Because I found that CBP and HIS officers had reasonable suspicion to search Saboonchi's devices, I denied the motion to suppress.  *Saboonchi*, 2014 WL 1364765, at *30–31.  Saboonchi now moves for reconsideration,

---

[1]     The facts underlying Saboonchi's motion are detailed in my earlier Memorandum Opinion, *United States v. Saboonchi*, ---- F.Supp. 2d ----, 2014 WL 1364765 (D. Md. Apr. 7, 2014).  For convenience, I will summarize the relevant facts briefly here.

arguing that that the Supreme Court has changed the relevant Fourth Amendment law in *Riley v. California*. Def.'s Mot. to Reconsider 1, ECF No. 157.

## II. DISCUSSION

### A. Riley v. California

Subsequent to my ruling, the Supreme Court issued *Riley v. California*, 134 S. Ct. 2473 (2014), on June 25, 2014. In *Riley*, the Court addressed the question of "whether the police may, without a warrant, search digital information on a cell phone seized from an individual who has been arrested." *Id.* at 2480. It considered the history of the search incident to arrest exception to the Fourth Amendment's warrant recquirement, identifying a trilogy of cases that analyzed the principles behind the exception and set forth the rules for applying it: *Chimel v. California*, 395 U.S. 752 (1969); *United States v. Robinson*, 414 U.S. 218 (1973); and *Arizona v. Gant*, 556 U.S. 332 (2009). In *Chimel*, the Court recognized that an arresting officer reasonably may search a suspect for weapons to protect the officer's safety and to preserve evidence the suspect may be carrying and able to conceal or destroy. *Chimel*, 395 U.S. at 762–63. In *Robinson*, the Court held that these justifications did not require a case-by-case analysis and that, when a suspect lawfully was arrested based on probable cause, the search of his person did not require further justification. *Robinson*, 414 U.S. at 235. Finally, in *Gant*, the Court limited the search of a vehicle incident to arrest, holding that concerns regarding officer safety and preservation of evidence only applied to such a search when the arrestee was unsecured and within reaching distance of a car's passenger compartment during the search. *Gant*, 556 U.S. at 338, 343.

In *Chimel* and *Robinson,* the Court weighed the strength of the government interests in the search against the diminished, but still existent, expectation of privacy held by an arrestee. *Riley*, 134 S. Ct. at 2484–85, 2488 (citing *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

But in *Riley*, the Court held that the government interests at stake did not outweigh even a reduced expectation of privacy with regard to cell phones because of the immense quantity and scope of information modern phones contain, which was "nearly inconceivable" when *Chimel* and *Robinson* were decided. *Id.* at 2484–5, 2489. While the Court recognized that an officer justifiably could search the *physical* aspects of a phone for concealed weapons, "[d]igital data stored on a cell phone cannot itself be used as a weapon to harm an arresting officer." *Id.* at 2485. The Court similarly was unpersuaded by the alleged need to protect any such digital evidence from either remote wiping or data encryption, "hav[ing] [] been given little reason to believe that either problem is prevalent." *Id.* at 2486. Remote wiping easily can be prevented either by removing the battery from a phone or by using "Faraday bags," "essentially sandwich bags made of aluminum foil: cheap, lightweight, and easy to use" devices that block the radio waves that may be used to wipe a device remotely. *Id*. at 2487. Finally, the Court considered—and soundly rejected—a *Gant* style categorical exception for cell phones themselves because, given the enormous quantity of personal information stored on a modern cell phone, such an exception "would in effect give 'police officers unbridled discretion to rummage at will among a person's private effects.'" *Id.* at 2492 (quoting *Gant*, 556 U.S. at 345).

*Riley* held unequivocally that digital data is not subject to the warrant exception for searches incident to arrest and that, as a general matter, law enforcement officers must obtain a warrant before searching the contents of an arrestee's electronic devices. *Id.* at 2484. But it did not recognize a categorical privilege for electronic data, and expressly noted that "even though the search incident to arrest exception does not apply to cell phones, *other case-specific* exceptions may still justify a warrantless search of a particular phone," *id.* at 2494 (emphasis added), such as the exigent circumstances exception, *id*. The border search exception is one such

4

case-specific exception.

### B. The Border Search Exception Is Unaffected by *Riley*

As I discussed in my previous opinion, the basis for the border search exception is "[t]he Government's interest in preventing the entry of unwanted persons and effects." *Saboonchi*, 2014 WL 1364765, at *6. (quoting *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004)). Because of the strength of this interest, "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Id.* (quoting *Montoya de Hernandez*, 473 U.S at 538). However, this is not an exemption from the Fourth Amendment, but merely an acknowledgement that a wide range of suspicionless searches are "reasonable simply by virtue of the fact that they occur at the border." *Id.* (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)). Whether a particular search is routine is a case-specific question of fact, *see id.*, and, when a border search goes beyond the routine it must rest on reasonable, particularized suspicion, *Montoya de Hernandez*, 473 U.S. at 541.

*Riley* expressly declined to address case-specific Fourth Amendment exceptions, but explained, as an example, how the exigent circumstances exception still might apply. 134 S. Ct. at 2494. Beyond exigencies, *Riley* makes no specific reference to the border search exception or any other case-specific exceptions to the warrant requirement previously announced by the Court other than to clarify that they remained intact. *Id.* at 2486; *see Flores-Montano*, 541 U.S. 149 (finding that dismantling of a car's gas tank without causing irreparable damage was a routine border search); *California v. Acevedo*, 500 U.S. 565 (1991) (distinguishing the categorical automobile exception from the search of a closed container within the vehicle, for which probable cause was required to search); *Maryland v. Buie*, 494 U.S. 325 (1990) (permitting a warrantless "protective sweep" of a residence when officers had reasonable suspicion to believe

that another dangerous person was present during an in-home arrest); *United States v. Leon*, 468 U.S. 897 (1984) (setting forth the "good-faith" exception). Accordingly, the Court gave every indication that its holding was limited to searches incident to arrest and no indication that it intended to exempt cell phones from all warrantless searches. *Riley*, 134 S. Ct. at 2494.

Nonetheless, Defendant argues that "[t]he traditional exception to the warrant requirement for searches occurring at the border has no more application to the search of Mr. Saboonchi's iPhone than the exception for searches incident to arrest had in *Riley*." Def's Mot. 5. This sweeping statement might have merit if the search incident to arrest and border search exceptions had the same purpose, were evaluated the same way, or were treated similarly under the law. But that is not the case. A search incident to arrest involves a defendant with a diminished, but still present, expectation of privacy, and the Supreme Court has found on only one occasion that an arrestee's expectation of privacy was sufficiently diminished so as to permit the search of containers found on his person. *Riley*, 134 S. Ct. at 2488. To reach beyond the scope of a search incident to arrest, the Court has instructed that police must obtain a warrant. *See Gant*, 556 U.S. at 338, 343.

That simply is not the case with routine border searches, where container searches are permissible with absolutely no suspicion. "Time and again, [the Supreme Court has] stated that 'searches made at the border . . . are reasonable simply by virtue of the fact that they occur at the border.'" *Flores-Montano*, 541 U.S. 152–53 (quoting *Ramsey*, 431 U.S. at 616). Defendant has not cited, and I have not found, a single case in the long history of the border search doctrine holding that more than reasonable suspicion was required for a border search of *any* extent. *See id.* at 153.

### C. The Riley *Findings Support My Conclusion*

The *Riley* Court rejected the Government's argument that "a search of all data stored on a cell phone is 'materially indistinguishable' from searches of [an arrestee's] physical items." *Riley*, 134 S. Ct. at 2488. Chief Justice Roberts could hardly have been more emphatic when he called the comparison "like saying a ride on horseback is materially indistinguishable from a flight to the moon. Both are ways of getting from point A to point B, but little else justifies lumping them together." *Id*. This is no different from my earlier finding that "[f]acile analogies of forensic examination of a computer or smartphone to the search of a briefcase, suitcase, or trunk are no more helpful than analogizing a glass of water to an Olympic swimming pool because both involve water located in a physical container." *Saboonchi*, 2014 WL 1364765, at *21.

*Riley* involved conventional searches, not forensic searches, and it is without question that the forensic search of Saboonchi's Devices was more invasive than the conventional searches discussed in *Riley*. But the underlying logic in the two cases is the same. The Supreme Court and I both noted that the sheer quantity of information available on a cell phone makes it unlike other objects to be searched. *Riley*, 134 S. Ct. at 2489; *Saboonchi*, 2014 WL 1364765, at *22. I also noted that "[o]ver ninety percent of American adults own some kind of a cellular phone and more than half of those own a smartphone," *Saboonchi*, 2014 WL 1364765 at *17, and the Court similarly found that "it is the person who is not carrying a cell phone, with all it contains, who is the exception," *Riley*, 134 S.Ct. at 2490. And I specifically recognized the danger inherent in the forensic recovery of data that historically was not available from physical records, *Saboonchi*, 2014 WL 1364765, at *27, just as the Court found such data to be "qualitatively different" from physical records, *Riley*, 134 S. Ct. at 2490. The technological

7

concerns expressed in *Riley* regarding the conventional search of cell phones entirely are in accord with my concerns about forensic searches.

That is why, *on the Defendant's motion*, I applied the most restrictive standard that the law has applied at the international border when I considered whether Saboonchi's Fourth Amendment rights had been violated. *Saboonchi*, 2014 WL 1364765, at *10; *see* Def's Supp. Mot. to Suppress 2, ECF No. 76. There is no question in my mind that the forensic search of Saboonchi's Devices was *more* invasive than the conventional searches found to be violations in *Riley*, but the invasiveness of a search is only part of the puzzle. *Riley*, 134 S. Ct. at 2484–85, 2488 (citing *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). *Riley* did not diminish the Government's interests in protecting the border or the scope of the border search exception. I agree that, within the context of a specific search, a modern cell phone deserves the highest level of Fourth Amendment protection available. But across the history of the border search doctrine, Defendant has not cited to a single case holding that anything more than reasonable suspicion was required to perform a search of even the most invasive kind at the international border, and I have found none. An invasive and warrantless border search may occur on no more than reasonable suspicion, *Saboonchi*, 2014 WL 1364765, at *10, and nothing in *Riley* appears to have changed that.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Reconsider will be DENIED.


Dated: July 28, 2014                                       /s/
                                                  Paul W. Grimm
                                                  United States District Judge

pag